```
            IN THE UNITED STATES DISTRICT COURT FOR THE
                     EASTERN DISTRICT OF VIRGINIA

                           Alexandria Division

TWI d/b/a/ SERVCO SOLUTIONS           )
(formerly known as THEODORE WILLE     )
INTERGRADE, GMBH, ZUG, SWITZERLAND    )
                                      )
          Plaintiff,                  )
                                      )          1:07cv908 (JCC)
          v.                          )
                                      )
CACI INTERNATIONAL, INC.              )
                                      )
          Defendants.                 )
```

**M E M O R A N D U M  O P I N I O N**

This matter is before the Court on Defendant's Motion to Dismiss, Plaintiff's Motion to Strike Declaration of John O'Connor, Plaintiff's Motion to Continue, Plaintiff's Motion to Strike Defendant's Reply Memorandum, and Plaintiff's Motion to Strike Declaration of Thomas Lex.  For reasons stated below, the Court will grant Defendant's Motion to Dismiss and deny Plaintiff's motions.

## I.  Background

This case arises out of the interaction between Plaintiff TWI d/b/a SERVCO Solutions ("TWI"), a distributor of food products, and Defendant CACI International, Inc. ("CACI"), a government contractor responsible for "securing and facilitating solicitations, contracts and orders between governments principals and third parties."  Compl. ¶ 6.  T.J. McLaren ("McLaren"), a Senior Contracts Administrator for CACI, dealt

1

with TWI with regards to solicitations, contracts, and orders, resulting in TWI successfully supplying several orders instigated by McLaren.

On or about October 19, 2005, McLaren contacted TWI as an agent of CACI, requesting the supply of a quantity of Meals-Ready-to-Eat ("MREs") to the United States military for the Tadji Military Training Base in Iraq ("the Order").  The request included a "Solicitation/Contract/Order for Commercial Items" form ("the Form") which was to be returned, signed, without changes to McLaren as an indication of willingness to execute the Order, at which point McLaren would "have the contracting officer affix his signature on the order and fully execute the contract," and send a copy back to TWI.  Compl. Ex. 1.  Before receiving the signed copy, TWI filled the Order and attempted to deliver the MREs to the Tadji Military Training Base.  However, the Form had not been signed by a government principal responsible for payment, so the MREs were held in Customs in Iraq.  Despite an attempt by TWI to obtain the necessary signature from CACI, it was never obtained, the Order never cleared Customs, and TWI was never paid for the Order.  On September 7, 2007, TWI filed suit against CACI, seeking punitive damages for its claims of breach of implied warranty of authority, fraudulent misrepresentation, negligent misrepresentation, and common-law negligence, on the grounds that CACI made misrepresentations regarding its authority

to bind the government and the state of the Order.

On October 19, 2007, CACI filed a Motion to Dismiss Plaintiff's Complaint.  On October 30, 2007, TWI filed a Motion to Strike the Declaration of John O'Connor, a Motion to Continue, and a Response in Opposition to Defendant's Motion to Dismiss. On November 5, 2007, CACI filed a Reply to Plaintiff's Response to the Motion to Dismiss.  On November 7, 2007, CACI filed a Memorandum in Opposition to Plaintiff's Motion to Continue and a Memorandum in Opposition to Plaintiff's Motion to Strike the Declaration of John O'Connor.  The same day, November 7, TWI filed a Motion to Strike Defendant's Reply Memorandum to Plaintiff's Response to the Motion to Dismiss and to Strike the Declaration of Thomas Lex.  On November 8, 2007, the day before the hearing on the Motions, CACI filed a Memorandum in Opposition to the Motion to Strike the Reply Memorandum and Declaration, and TWI filed a Reply Memorandum to Defendant's Response in Opposition to Plaintiff's Motion to Continue.  These Motions are currently before the Court.

## II. Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint, *see Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *De*

*Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991) (citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

In passing on a motion to dismiss, "the material allegations of the complaint are taken as admitted." *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted). Moreover, "the complaint is to be liberally construed in favor of plaintiff." *Id.* In addition, a motion to dismiss must be assessed in light of Rule 8's liberal pleading standards, which require only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. Nevertheless, while Rule 8 does not require "detailed factual allegations," a plaintiff must still provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

A) <u>Breach of Warranty of Authority</u>

Plaintiff claims that Defendant breached its implied warranty of authority, a claim that Defendant avers sounds in contract. Defendant argues that dismissal is appropriate on this count because there are no facts that entitle Plaintiff to relief. Plaintiff, as the party wishing to enter into a contractual arrangement with the government (in this case,

4

through an intermediary government contractor), bore "the burden of making sure that the person who purportedly represents the government actually has that authority" to form a contract. *Gardiner v. Virgin Islands Water & Power Auth.*, 145 F.3d 635, 644 (3d Cir. 1998); *see also Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (U.S. 1947); *Harbert/Lummus Agrifuels Projects v. United States*, 142 F.3d 1429, 1432 (Fed. Cir. 1998).

In a case similar to this one, the Fourth Circuit upheld the district court's dismissal of a claim that an authorized official acted outside of his authority and was liable for breach of the warranty of authority that he could bind the government. *Duncan v. Peninger*, 624 F.2d 486 (4th Cir. 1980). The Court held that "since plaintiffs were chargeable with knowledge that [the official] had no authority to bind the [government agency] to a contract for a sale of the assets admittedly belonging to the Government, it is simply untenable to contend, on the basis of the pleadings in this case, that [the agent] implicitly warranted his authority." *Id.* at 490. Therefore, there was "no foundation for the . . . claim of an asserted breach of warranty" and "[d]ismissal was proper." *Id.*[1]

---

[1] The Court, deciding this case before the Supreme Court considered the applicability of official immunity in *Westfall v. Erwin*, 484 U.S. 292 (1988), did not address the question of whether official immunity from suit applied to this contract claim. Instead, the Fourth Circuit specifically considered a breach of warranty of authority claim in a case where the plaintiff has the burden of determining if the person with whom they are dealing has the requisite authority to bind the government.

Plaintiff bore the burden of ascertaining that Defendant had the power to bind the government, and Plaintiff admits that Defendant "CACI lacked the power to bind said government principal concerning the Order."  Compl. ¶ 23.  Therefore, Defendant could not be liable in contract for having made a warrant of authority, and this claim should be dismissed for failure to state a claim on which relief can be granted.

B) <u>Absolute Immunity</u>

The Supreme Court has established that "[f]ederal officials exercising discretion while acting within the scope of their employment" have "absolute immunity from state law tort liability," *Mangold v. Analytic Servs.*, 77 F.3d 1442, 1446-47 (4th Cir. 1996)(citing *Barr v. Matteo*, 360 U.S. 564, 569-73 (1959 (plurality opinion); *Westfall v. Erwin*, 484 U.S. 292, 295 (1988).  The Fourth Circuit has established that official immunity extends to government contractors on the grounds that "[i]f absolute immunity protects a particular governmental function, no matter how many times or to what level that function is delegated, it is a small step to protect that function when delegated to private contractors."  *Id.* at 1447-48.

Moreover, the public interest is served by the award of official immunity for government contractors.  As the Fourth Circuit noted, "[t]he government cannot perform all necessary and proper services itself and must therefore contract out some

6

services," and that ability must be protected. *Mangold* at 1448. The Court limited the extension of immunity to the private sector to "the narrow circumstances where the public interest in efficient government outweighs the costs of granting such immunity." *Id.* at 1447. Exposing contractors to tort suits would impair the willingness of contractors to bid on government contracts and hamper the government's ability to operate efficiently. The Second Circuit defined "[t]he rationale behind such immunity" as "a concern that the threat of liability will make federal officials unduly timid in carrying out their official duties, and that effective government will be promoted if officials are freed of the costs of vexatious and often frivolous damages suits," a concern which extends to the contractors responsible for carrying out those duties. *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 72 (2d Cir. 1998)(quoting *Westfall*, 484 U.S. at 295)(internal quotations omitted). Public policy as well as settled law dictates that the same immunity from tort suits afforded to government officials should also be awarded to those who perform delegated actions in the government's stead.

      Because "[t]he award of contracts falls within the ambit of the discretionary function exception," such actions, taken by a government official, are entitled to immunity. *Williams v. United States*, 50 F.3d 299, 310 (4th Cir. 1995).

Plaintiff alleges that Defendant's actions were not within the scope of employment, but that "CACI exceeded the scope of any authorization or direction from the federal government." Resp. in Opp'n to Def.'s Mot. to Dismiss at 7. Plaintiff uses the fact that the signature of a contracting officer was unable to be obtained as indicative of the fact that Defendant was operating outside the authorization of the government. However, the law of absolute immunity does not require explicit authorization by the government for each action taken, instead defining the scope of contractor immunity "by the nature of the function being performed." *Mangold v. Analytic Servs.*, 77 F.3d 1442, 1447 (4th Cir. 1996)(citing *Barr* 360 U.S. 564; *Westfall*, 484 U.S. 292). Were a government official responsible for "securing and facilitating solicitations, contracts and orders between government principals and third parties," Compl. ¶ 6, to perform the negligent actions Defendant is alleged to have performed, the official would be immune from tort suits arising out of that behavior. Therefore, Defendant, the one to whom the government delegated the function of awarding contracts, is also immune from state law tort liability for discretionary actions performed within the scope of employment. Thus, the state law tort claims of fraudulent misrepresentation, negligent misrepresentation, common-law negligence, and the claim for punitive damages, will be dismissed. There is no need for the Court to reach the

question of immunity from Iraq law since all claims will be dismissed on other grounds.

    C) <u>Declaration of John O'Connor</u>

Plaintiff moves pursuant to Fed. R. Civ. P. 12(f) to strike the Declaration of John F. O'Connor and the exhibits attached thereto ("O'Connor Declaration"), which Defendant filed as part of its Memorandum of Law in Support of its Motion to Dismiss.  Plaintiff makes two arguments: (1) that Defendant relied in support of its Motion to Dismiss on an email attached as an exhibit to the O'Connor Declaration that had not been attached to, or referenced anywhere in, Plaintiff's Complaint; and (2) that in the event that the Court converts Defendant's Motion to Dismiss into a motion for summary judgment, the O'Connor Declaration does not satisfy the requirements of Fed. R. Civ. P. 56(e).  Pl.'s Resp. in Opp'n at 12-13.

As to Plaintiff's second argument, the Court will not convert Defendant's Motion to Dismiss into a motion for summary judgment, deciding this matter on the basis of the pleadings, without taking into consideration any extrinsic evidence, and thus this argument is rendered moot.  As to Plaintiff's first argument, the Court will decide Defendant's motion without referring to the email in question, and thus need not resolve this particular issue.  As a result, Plaintiff's Motion to Strike will be denied.

D) <u>Continue</u>

Plaintiff moves for an order of continuance in the case of this Court converting Defendant's Motion to Dismiss into a motion for summary judgment. As mentioned above, the Court will decide these issues as a Motion to Dismiss, and therefore will deny Plaintiff's Motion for Order of Continuance.

E) <u>Violation of Local Rules</u>

Plaintiff moves to strike Defendant's Reply Memorandum. Plaintiff argues that Defendant's Reply was untimely because it was filed more than three days after service of Plaintiff's Response, in violation of Local Rule 7(F)(1). Plaintiff's Response was served on Defendant on October 30, 2007, and Defendant's Reply was filed November 5, 2007, six days after Plaintiff's Response and three days after the deadline established by Local Rule 7(F)(1). Defendant argues that Federal Rule 6(e) grants a three calendar day exception when service is made by electronic means, and that the Court's Electronic Case Filing Policies and Procedures Manual ("Manual") incorporates that deadline into the response period. Fed. R. Civ. P. 6(e); Manual at 25. Because Plaintiff's Reply was filed six days after Defendant's Response, it is timely within the meaning of the Local Rules. The Court will not strike Defendant's Reply Memorandum.

F) <u>Declaration of Thomas Lex</u>

Plaintiff moves to strike the Declaration of Thomas Lex ("Lex Declaration"), which was attached to Defendant's Reply, contending that it is an improper attempt by Defendant to offer new evidence in support of its Motion to Dismiss. Fed. R. Civ. P. 6(d) states that "[w]hen a motion is supported by affidavit, the affidavit shall be served with the motion." Fed. R. Civ. P. 6(d). Defendant's Motion to Dismiss was filed on October 19, 2007, but the Lex Declaration was filed separately on November 5 as an attachment to Defendant's Reply. However, given that the Court will not reach the question of Defendant's assertion of immunity under CPAO 17, the subject matter to which the Lex Declaration pertains, there is no need for the Court to resolve the question of its admissibility. As a result, this Motion will be denied.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss will be granted, and Plaintiff's Motions to Strike Declaration of John O'Connor, for Order of Continuance, to Strike Defendant's Reply Memorandum and to Strike the Declaration of Thomas Lex will be denied.

An appropriate order will issue.

November 9, 2007                             /s/
Alexandria, Virginia                  James C. Cacheris
                             UNITED STATES DISTRICT COURT JUDGE